IN RE ELMORE, ALLEGED MENTALLY RETARDED.

(No. 83AP-362—Decided October 25, 1983.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. J. Michael Evans, Mr. David J. Kovach, Mr. Michael Miller,* prosecuting attorney, and *Mr. William Reddington,* for appellee Department of Mental Retardation and Developmental Disabilities.

*Messrs. Hamilton, Kramer, Myers, Summers & Cheek* and *Mr. Robert V. Morris II,* for appellant Joe Elmore, Jr.

*Messrs. Chester, Hoffman & Willcox, Mr. John J. Chester* and *Mr. William K. Wilkinson,* for *amicus curiae,* Balanced Mental Health Laws, Inc.

WHITESIDE, P.J. Appellant, Joseph Elmore, Jr., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Probate, finding him to be at least moderately mentally retarded and, because thereof, to represent a very substantial risk of physical impairment or injury to himself, pursuant to R.C. 5123.68(N)(1) (now R.C. 5123.01[L][1]), or that he needs and is susceptible to significant habilitation in an institution pursuant to R.C. 5123.68(N)(2) (now R.C. 5123.01[L][2]) and committing him to the care of the Department of Mental Retardation and Developmental Disabilities, which the court found to have the ability to provide for the training required and needed by appellant. In support of his appeal, appellant raises four assignments of error, as follows:

"1. The trial court committed prejudicial error in granting the prosecutor of Franklin County standing to present witnesses in the case.

"2. The trial court committed prejudicial error in allowing the hearing to be public and permitting a newspaper reporter in the hearing room.

"3. The trial court committed prejudicial error in finding the respondent moderately mentally retarded and subject to court ordered hospitalization against the manifest weight of the evidence.

"4. The trial court committed prejudicial error in interpreting the definition

of mentally retarded person subject to court ordered institutionalization."

Appellant was indicted on two counts of aggravated burglary and one count of theft, but was found incompetent to stand trial pursuant to order of the Franklin County Court of Common Pleas, which order specifically found appellant to be either mentally ill or mentally retarded and further ordered applicant Thomas Studebaker, Chief of Probation, to file an affidavit in the probate court alleging appellant to be mentally ill or mentally retarded subject to hospitalization by court order pursuant to R.C. 5122.01 and 5123.68 (now 5123.01). The present proceedings were commenced by the filing by Studebaker of two affidavits, one alleging appellant to be moderately mentally retarded, and the second alleging him to be mentally ill. Thereafter, the trial court entered an order finding appellant to be at least moderately mentally retarded and ordering that he be institutionalized in the Timothy B. Moritz Forensic Unit. Subsequently, the trial court found that Elmore was not sufficiently mentally retarded to be at that institution and ordered him discharged to a less restrictive environment, and further ordered, however, that the order be delayed and the matter set for hearing after service upon the trial judge and the prosecuting attorney involved in the criminal proceedings in which Elmore had been found not to be competent to stand trial. The prosecuting attorney filed a motion requesting leave to intervene in the proceedings as an interested person and to be given the right to examine witnesses and present evidence. The prosecutor was allowed to do so, and a "discharge hearing" was scheduled. The order from which this appeal is taken is the result of the discharge hearing.

The first issue raised by appellant is the contention that the prosecuting attorney should not have been allowed to participate in the proceedings. We find no merit to this contention. First, the pros-ecuting attorney is the attorney for the trial court and for Studebaker, who filed the original affidavit commencing these proceedings, pursuant to the order of the court of common pleas, general division, in the criminal proceedings. R.C. 2945.38(C) specifically provides that, if a court finds a defendant to be incompetent to stand trial, and that he is not likely to become competent to stand trial within one year, even if provided with treatment, "the court may cause an affidavit to be filed in the probate court * * * alleging that the defendant is a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order." It will be noted that the language of the statute is not mandatory but permits the court to determine whether or not such an affidavit should be ordered to be filed. Here, the trial court ordered such an affidavit to be filed by Studebaker. R.C. 2945.38(C) further provides that:

"* * * The head of the hospital or facility, managing officer of the institution, director of the program, or person to which the defendant is committed or admitted shall, at least ten days prior to the discharge or immediately upon learning of a change to voluntary status, send written notice to the prosecutor of the date on which the defendant will be discharged or has been admitted on voluntary status."

Thus, there is statutory recognition that the prosecutor is a person entitled to notice of action by the facility to which the mentally ill or mentally retarded person has been committed prior to his discharge. R.C. 5123.71 provides for the filing of the affidavit with respect to mental retardation, but makes no express provision as to participation by the affiant in the proceedings. There is, however, nothing in the statute precluding the affiant to the affidavit from participating in the proceedings through counsel. Appellant, however, contends that the sole purpose of R.C. 2945.38(C) is to provide notice to the prosecutor of the pending

discharge so that the accused may be reindicted if deemed appropriate.

Appellant also points out that R.C. 5123.72 provides that a designee of the Director of Mental Retardation and Developmental Disabilities shall "present the case on behalf of the state," except with respect to respondents found not guilty by reason of insanity, in which event, "the prosecutor shall present the evidence." R.C. 5123.76(A)(10) contains similar provisions. Neither of these provisions, however, forecloses the prosecutor from attending and participating in the hearings. Rather, R.C. 5123.76(H) clearly contemplates that the prosecutor may participate in the proceedings, providing that, at the end of a commitment period, if the person has neither been discharged nor requested voluntary admission status, such person shall be discharged "unless at least ten days before expiration of that period * * * the prosecution files an application with the court requesting continued commitment." This request for continued commitment is not limited to situations involving persons found not guilty by reason of insanity but includes also persons found incompetent to stand trial, since R.C. 5123.76(G)(1) specifically requires notification of the prosecutor prior to discharge in accordance with R.C. 2945.38(C).

Although the statutory provisions are no paragon of clarity with respect to participation of the prosecutor in the proceedings, they do consistently recognize the interest of the prosecutor in proceedings involving persons who have been found incompetent to stand trial for criminal offenses. Thus, we find no error or abuse of discretion on the part of the trial court in permitting the prosecutor to participate in the proceedings and to examine witnesses and present evidence, and, in any event, no prejudice to appellant has been demonstrated. One of the salient issues to be determined is whether the public interest requires institutionalization by court order of the person found to be incompetent to stand trial. While general, and thus not controlling nor a specific statute to the contrary, R.C. 309.08 provides in part that:

"The prosecuting attorney * * * shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party * * * in the probate court, court of common pleas, and court of appeals. * * *"

The language is general and is not necessarily limited to criminal prosecutions. In any event, we find no prejudicial error, and the first assignment of error is not well-taken.

By the second assignment of error, appellant contends that the probate court erred in permitting the public and press to attend the hearing. R.C. 5123.76(A)(5) provides that: "The hearing may be closed to the public, unless counsel for the respondent requests that the hearing be open to the public * * *." Clearly, a discretion is vested in the trial court whether to conduct a public hearing subject only to the right of the respondent to require a public hearing. We need not inquire into the constitutionality of such a provision since the trial court chose to keep the hearing public. This section may be contrasted with R.C. 5122.15(A)(5), which purports to require hearings closed to the public, unless the respondent requests otherwise, in hearings concerning an alleged mentally ill person. While there is language in R.C. 5123.76(A)(6) tending to indicate "persons having a legitimate interest in the proceedings" may be admitted only if there be no objection by the respondent or the Director of the Department of Mental Retardation and Developmental Disabilities, this section could have application only if the court had exercised its discretion to have the hearing closed to the public. Star-chamber type proceedings are ordinarily to be avoided. Exclusion of the press from such hearings raises a substantial issue of constitutional magnitude. No such issue is presented in this case, since the trial court exercised its

discretion to have a public hearing. Whether there would have been an abuse if the trial court had closed the hearing is not before us. Finding no abuse of discretion, and express statutory authority for the public hearing, including the admission of the press, the second assignment of error is not well-taken.

By the third assignment of error, appellant contends that the trial court's judgment is against the manifest weight of the evidence. A review of the record, however, reveals overwhelming support in the record for the factual findings made by the trial court when the requisite statutory provisions are properly interpreted, which is the issue raised by the fourth assignment of error.

R.C. 5123.01(K) defines "mentally retarded person" as: "A person having significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior, manifested during the developmental period." More importantly, R.C. 5123.01(L) defines "mentally retarded persons subject to institutionalization by court order" as:

"(1) A person who is at least moderately mentally retarded and, because of his retardation, represents a very substantial risk of physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his most basic physical needs and that provision for such needs is not available in the community;

"(2) A person who is at least moderately mentally retarded and, because of his retardation, needs and is susceptible to significant habilitation in an institution."

There was overwhelming evidence that appellant is unable to provide for his most basic physical needs, and that there is no provision available to meet those needs in the community. There was also overwhelming evidence that appellant represents a substantial risk of physical impairment or injury to himself. The two provisions are in the disjunctive, although the trial court found both. There was also evidence supporting a finding that, because of his retardation, appellant needs and is susceptible to significant habilitation in an institution, but some question was raised as to the availability of an institution capable of performing this function in a proper manner. The testimony of Dr. Randall, a psychiatrist, in itself was sufficient to support the factual findings of the trial court, being competent, credible evidence. Randall testified that the closest institution available for appellant would be the Columbus Developmental Center, although he further stated that: "The idealized facility I am sure does not exist." He further testified: "I don't think Mr. Elmore could function in an open environmental situation." Randall further stated:

"It's very obvious Joe Elmore at the present time is unable to provide for his own basic needs. He could not find shelter or food. He could not find his way about, and with his communication problems he could have great difficulty seeking any sort of assistance and help from others. * * * I think he does represent a risk of harm to himself and others in that being unable to provide for his needs by his poor judgment, by his misinterpretation of social communications as well as being a ready victim for exploitation from others. * * * I think also with his tendency to become explosive himself and angry and his own frustrations, as well as a tendency to be provocative of others could readily result in behavior — could result in his precipitating violence from others."

Randall testfied that Elmore is not functioning at a mild retardation level but, instead, stated: "I would certainly consider him moderately impaired in an adaptive level * * *." This is contrasted to the testimony of Dr. Zakman, another psychiatrist, who testified that: "The respondent is functioning on the level of mild mental retardation." However, much of Zakman's testimony is inconsis-

tent with his conclusion. He further qualified his opinion by the statement that: "There are areas if one would have to evaluate his ability to communicate and his verbal skills in general * * * this would probably be very low on the total scale, but overall he's functioning, according to my judgment, at somewhere on the lower level of mildly mentally retarded on the lower ledge." He further stated with respect to appellant: "I do not think that anyone reasonably would say that he would be safe at home." Also, on cross-examination, he admitted, with respect to the level at which appellant is operating at present in his communication skill, especially with regard to his ability to interpret and convey thoughts: "Very optimistically if I would say moderate, severely handicapped in this case."

A licensed psychologist, Ed Bozymski, testified that certain tests performed upon Elmore indicate he functions at a mildly retarded level, using an objective standardized testing instrument. However, he clarified his testimony, stating that he was referring only to "intellectual level of functioning." His specific testimony was: "I would still code Joe at a mildly retarded level with a notation there is no question he has maladaptive antisocial behavior that needs attention." Another psychologist, a Dr. Davis, stated an opinion that: "Elmore functions at an intellectual level within the mildly mentally retarded range of general intellectual functions."

Unfortunately, the testimony of the two psychologists and one psychiatrist was predicated solely on test results, not upon actual intellectual functioning. All the evidence tended to indicate adaptive behavior was impaired to a moderate degree. In any event, the evidence was overwhelming that appellant was moderately mentally retarded as defined by R.C. 5123.01(M) when such words are construed in accordance with the statutory definition, rather than upon preconceived meanings ascribed by some

of the witnesses, which are not consistent with the statutory definition. Accordingly, the third assignment of error is not well-taken.

The fourth assignment of error, as we previously noted, raises the issue of the statutory meaning of "moderately mentally retarded," which is defined by R.C. 5123.01(M), as follows:

" 'A person who is at least moderately mentally retarded' means a person who is found, following a comprehensive evaluation, to be impaired in adaptive behavior to a moderate degree and to be functioning at the moderate level of intellectual functioning in accordance with standard measurements as recorded in the manual of terminology and classification in mental retardation, 1973 revision, American association on mental deficiency publication."

To be "moderately mentally retarded," two findings are necessary: (1) that the person is "impaired in adaptive behavior to a moderate degree"; and (2) that the person is "functioning at the moderate level of intellectual functioning." As to adaptive behavior, there appears to be little disagreement that Elmore is impaired, at least to a moderate degree. It is the intellectual functioning factor upon which differences exist.

For the most part, those experts finding appellant to be functioning at the mild level of intellectual functioning relied almost exclusively upon certain tests given. This, of course, is derived from that portion of the statute referring to "standard measurements as recorded in the manual of terminology and classification in mental retardation." Unfortunately, this manual is not in evidence and is not before us. However, it is actual intellectual functioning, not test scores, that is to be evaluated and determined. As several of the witnesses testified, one may test either higher or lower than actual intellectual functioning. The statute does not provide, as some have apparently assumed, that tests scores alone deter-

mine the level of intellectual functioning. Rather, the statute requires a "comprehensive evaluation," and refers to "standard measurements," but does not provide that the test score on a given day be the sole determining factor.

Furthermore, as we have noted previously, it is a determination by the trial court that is to be made, predicated upon testimony from expert witnesses, but, nonetheless, a judicial factual determination by the court. If certain test scores were in themselves definitive and conclusive, there would be no need for a court decision. However, R.C. 5123.76(C) expressly requires a finding by "clear and convincing evidence that the respondent named in the affidavit is a mentally retarded person subject to institutionalization by court order." This involves not only a determination that the person is moderately mentally retarded as defined by R.C. 5123.01(M), of which there is ample evidence in this case, but also a finding that he represents a substantial risk of physical impairment or injury to himself or that he needs and is susceptible to significant habilitation in an institution. Appellant contends that "his retardation does not cause him to commit crimes." While this conclusion is of doubtful validity, nevertheless, it is not controlling, even if correct. Appellant's history of criminal activity constitutes evidence of his adaptive behavior, although not conclusive. The statutory definition does not require that the adaptive behavior be caused by the moderate mental retardation, but, instead, that impairment of adaptive behavior to a moderate degree constitutes one factor of moderate mental retardation, the other being intellectual functioning. The trial court did not err to the prejudice of appellant in interpreting the statute.

Unfortunately, we are confronted with two somewhat confusing statutory applications; namely, R.C. 2945.38 and Chapter 5123, which, although interrelated, involve different aspects of the same problem. Although not explicit in R.C. 2945.38, it is doubtful that one who is only mildly mentally retarded, as apparently defined by some of the expert witnesses in this case, could at the same time be incompetent to stand trial within the statutory definition of R.C. 2945.37(A) requiring a finding that: "[B]ecause of his present mental condition, he is incapable of understanding the nature and objective of the proceedings against him or of presently assisting in his defense." Although not clear from testimony in this case, it would appear that, one who is only mildly mentally retarded would be capable of understanding the nature and objective of the proceedings and of assisting in his defense. Thus, there is somewhat of a *non sequitur* in finding one incompetent to stand trial and at the same time only mildly mentally retarded, although the statute does not necessarily preclude that possibility. See R.C. 2945.38(C). The fourth assignment of error is not well-taken.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Probate, is affirmed.

*Judgment affirmed.*

REILLY and MOYER, JJ., concur.