### In re ELMORE.

[Cite as *In re Elmore* (1992), 83 Ohio App.3d 348.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–265, 92AP–623.

Decided Oct. 29, 1992.

*Beatty & Roseboro* and *Anthony M. Roseboro,* for appellant Joseph Elmore, Jr.

*Ball, Noga & Tanoury* and *John L. Tanoury,* Special Counsel for *Lee Fisher,* Attorney General, for appellant Ohio Department of Mental Retardation and Development Disabilities.

*David A. Belinky,* for guardian *ad litem.*

*Evans, St. Clair & Kelsey* and *J. Michael Evans,* for Franklin County Alcohol, Drug Abuse and Mental Health Board.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Susan E. Day,* Assistant Prosecuting Attorney; and *Martin Kerscher,* for Franklin County Board of Mental Retardation and Developmental Disabilities.

---

McCORMAC, Judge.

Appellants, Ohio Department of Mental Retardation and Developmental Disabilities and Joseph Elmore, Jr., appeal the Franklin County Probate Court's decision and entry dated January 30, 1992, wherein appellant Elmore (hereinafter "respondent") was held to be a mentally retarded person subject to court-ordered institutionalization and was committed for a period not to exceed ninety days.

The probate court's findings and entry were made following full commitment hearings which were held pursuant to R.C. 5123.76. Respondent asserts the following assignments of error in support of this appeal:

"1. The probate court erred in both conducting a full hearing and committing the respondent pursuant to Ohio Revised Code § 5123.76 without having first secured a current comprehensive evaluation of respondent as defined in Ohio Revised Code § 5123.01(C) and mandated by Ohio Revised Code § 5123.74.

"2. The probate court erred in ordering that respondent, once committed, could not be discharged without prior approval of the probate court.

"3. The probate court's finding that respondent was moderately mentally retarded is against the manifest weight of the evidence."

In its entry dated January 30, 1992, the probate court ordered and scheduled a continued commitment hearing to be held on March 4, 1992. No actual continued commitment hearing was held. The parties, instead, met in chambers with the probate judge on the above-scheduled date. An agreed entry with certain agreed stipulated findings was discussed. The parties allegedly agreed that respondent's condition had not changed and that he would remain at the Columbus Developmental Center while an alternative, less restrictive, placement was being arranged. The matter was allegedly continued pending submittal of an agreed judgment entry. The probate court, however, issued its decision and entry prior to submittal of an agreed entry pursuant to C.P.Sup.R. 24(F) and (G). Appellant Ohio Department of Mental Retardation and Developmental Disabilities appeals the probate court's entry committing respondent for a period not to exceed two years, with no significant deviation from the treatment plan or change of placement without prior approval of court. In support of this appeal, appellant asserts the following assignments of error (relabeled Assignments of Error Nos. 4, 5 and 6):

"[4]. The probate court's entry committing respondent for a period not to exceed two years is invalid in that no hearing was conducted or evidence presented to support said entry and the decision therefore is against the manifest weight of the evidence.

"[5]. The probate court erred in ordering that respondent, once committed, could not be discharged without prior approval of the probate court.

"[6]. The probate court's finding that respondent was moderately mentally retarded is against the manifest weight of the evidence."

■ In their first and fourth assignments of error, appellants allege that the probate court erred in conducting the full hearing and committing respondent,

pursuant to R.C. 5123.76, without first obtaining a "current comprehensive evaluation" as defined in R.C. 5123.01(C) and mandated by R.C. 5123.74.

R.C. 5123.74(A) specifically mandates that a current comprehensive evaluation be performed prior to conducting a full hearing. This provision further makes it a duty of the probate court to cause such an examination to be performed.

Although a current comprehensive evaluation is a mandatory prerequisite to a full hearing under R.C. 5123.76, it is not a jurisdictional requirement. The probate court still has power, upon the filing of an affidavit, to order the performance of a comprehensive evaluation, conduct a probable cause hearing, and/or temporarily detain. However, R.C. 5123.74 does require that a current comprehensive evaluation be performed and submitted to the court prior to the full hearing. The fact that the requirement is not jurisdictional does not make it harmless error, as alleged by appellees, despite all the other evidence adduced at the hearing. Without a current comprehensive evaluation, the court cannot comply with its statutory obligation to make that determination only after considering a comprehensive evaluation. Thus, it was prejudicial error to hold a full hearing and enter a final order that respondent is mentally retarded subject to court-ordered institutionalization without first obtaining and considering a current comprehensive evaluation of respondent.

Appellees, Franklin County Alcohol, Drug Abuse and Mental Health Board and the guardian *ad litem*, allege that this statutory mandate supplants the trial court's authority to make a judicial factual determination of whether respondent is mentally retarded subject to institutionalization by court order. The comprehensive evaluation is a mandatory factor to consider but is not the sole basis for determination. The probate court's authority to make the ultimate judicial determination is, therefore, left intact and is not supplanted by the findings contained in the comprehensive evaluation, as explained in our prior decision, *In re Elmore* (1983), 13 Ohio App.3d 79, 13 OBR 93, 468 N.E.2d 97.

Each witness testified that a "comprehensive evaluation," as defined in R.C. 5123.01(C), was not performed. The legislature specifically defined "comprehensive evaluation" as "a sequence of observations and examinations of a person leading to conclusions and recommendations formulated jointly * * * by a group of persons with special training and experience in the diagnosis and management of the mentally retarded * * *." In addition, this provision states that the "group shall include individuals who are certified by the department of mental retardation and developmental disabilities * * * and are professionally qualified in the fields of medicine, education, psychology, and social work, together with such other specialists as the individual case may require." As the statute reads, no one person can perform a comprehensive evaluation. Dr. John Randall, M.D., a psychiatrist, admitted that his recommendation was based upon an examination

performed solely by him and not upon a comprehensive evaluation. Dr. Kahn, Ph.D., a licensed psychologist, admitted that the only other person involved in his examination of respondent was Dr. Betty Bradley, who is also a psychologist. Mike Oliva, social worker, stated that his report was not based on a comprehensive evaluation. His report was, instead, based upon the report prepared for purposes of determining whether respondent was competent to stand trial. There was no joint evaluation involving specialists in the fields of medicine, education, social work, etc.

The probate court acknowledged that no comprehensive evaluation was performed for this hearing, but ultimately found that there was sufficient evidence to support a finding that respondent is mentally retarded subject to court-ordered institutionalization. Although there was sufficient evidence to support that finding, as discussed in appellant's third assignment of error, the finding was not proper as the admission of other supportive evidence does not excuse the statutory mandate to obtain and consider a current comprehensive evaluation. An exception might be found where a comprehensive evaluation is performed shortly after entry of the court's order, which evaluation fully confirms the underlying order. Then the omission of a current comprehensive evaluation prior to the full hearing would constitute harmless error, since the report would provide no basis for a different ruling.

It was also prejudicial error to order commitment to the Columbus Developmental Center, a public institution, without obtaining a current comprehensive evaluation indicating that the placement would be appropriate.

R.C. 5123.76(C)(1)(a) expressly limits the court's ability to commit respondent to a public institution. The court is permitted to commit a mentally retarded person subject to institutionalization by court order "[t]o a public institution * * * provided that such placement is indicated by the comprehensive evaluation report filed pursuant to section 5123.74 of the Revised Code[.]" This statutory mandate does not supplant the court's ability to make a judicial determination. However, the comprehensive evaluation is a mandatory factor to consider when determining the least restrictive alternative available. R.C. 5123.76(E) requires the court to consider "the comprehensive evaluation, diagnosis, and projected habilitation plan" when determining the place to which respondent is to be committed. The court must order the least restrictive placement. If the court determines that a public institution is the least restrictive alternative available and that such a placement would be consistent with habilitation goals for the respondent, the court may properly commit respondent to such public institution provided that a current comprehensive evaluation deems it to be appropriate.

In order to properly determine that respondent is mentally retarded subject to court-ordered institutionalization, the probate court must consider a current

comprehensive evaluation. Furthermore, court-ordered commitment to a public institution requires that a current comprehensive evaluation deem it appropriate.

Appellants' first and fourth assignments of error are sustained.

Appellants allege in their second and fifth assignments of error that R.C. 5123.79(A) grants power to the managing officer and the chief program director to discharge respondent without court approval upon a joint determination that institutionalization is no longer appropriate. Relying on this provision, appellants claim that the probate court erred in restricting this right to discharge by requiring court approval.

It is well settled that the probate court is a court of limited jurisdiction. Its proceedings are restricted to those permitted by statute and the Constitution. *Schucker v. Metcalf* (1986), 22 Ohio St.3d 33, 34, 22 OBR 27, 28, 488 N.E.2d 210, 212; *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708. Although R.C. 5123.76(C) and 5123.76(H) grant the court power to order institutionalization and power to discharge, there is no provision in R.C. 5123.71 through 5123.79 granting the court power to restrict the power vested in the managing officer of the facility to discharge.

The statute, instead, creates a mandatory duty for the managing officer to discharge respondent in certain specified situations. Under R.C. 5123.76(H), the managing officer is required to discharge respondent after completion of the court-ordered commitment period if an application for continued commitment has not been filed and the respondent has not already been discharged. Furthermore, R.C. 5123.79(A), as alleged by appellants, requires the managing officer, upon joint determination with the chief program director that institutionalization is no longer appropriate, to discharge respondent even without court approval. This duty to discharge respondent when institutionalization is no longer appropriate exists even though a court-ordered commitment period may not have expired. This is a duty of the managing officer, and the court is powerless to restrict a discharge properly executed by the managing officer. The probate court may, however, require notice and, in fact, R.C. 5123.79(A) requires it.

The requirement of a current comprehensive evaluation for initial and subsequent continued commitments help ensure that institutionalization is appropriate. The current comprehensive evaluation, therefore, helps to prevent an improper discharge or a discharge immediately after the court enters its order committing respondent to the facility.

Appellants' second and fifth assignments of error are sustained.

In their third and sixth assignments of error, appellants contend that the probate court's finding that respondent was moderately mentally retarded is

against the manifest weight of the evidence. It is initially noted that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

The elements relevant to this assignment of error are found in R.C. 5123.01(M), which defines "moderate mental retardation." This provision describes the requisite severity of mental retardation necessary to involuntarily institutionalize respondent. As this court has previously held, a determination of moderate mental retardation under R.C. 5123.01(M) requires two findings: "(1) that the person is 'impaired in adaptive behavior to a moderate degree'; and (2) that the person is 'functioning at the moderate level of intellectual functioning.'" *In re Elmore*, 13 Ohio App.3d at 83, 13 OBR at 99, 468 N.E.2d at 103. A review of the record indicates that there is ample evidence to support both of the above elements.

The court had before it testimony from John Randall, M.D., a psychiatrist appointed by the court to evaluate respondent; Dr. Kahn, a licensed psychologist, who is treating respondent at the Columbus Developmental Center; and Mike Oliva, a social worker with the Franklin County Board of Mental Retardation and Developmental Disabilities.

Dr. Randall testified that respondent is moderately mentally retarded. In evaluating respondent, Dr. Randall relied upon the American Psychiatric Association Diagnostic and Statistics Manual of Mental Disorders, which is recognized as the official formal classification and description of mental disorders, including mental retardation. In referring to his standard manual, Dr. Randall testified that "assessment of the severity or degree of mental retardation is based not just upon the IQ count on the test, but in consideration of adaptive skills involved in social adjustment, ability to communicate and ability to function within the environment of the world." Dr. Randall testified further that "although a valid and reliable intelligence quotient, that is an IQ test, is a major indicator of retardation, this IQ test must be treated with flexibility in order to allow for unusual or additional deficits or defects or to acknowledge unusually good adaption." This court has previously held that test scores alone do not determine the level of intellectual functioning. *In re Elmore*, 13 Ohio App.3d at 84, 13 OBR at 99, 468 N.E.2d at 104.

The record is replete with evidence that respondent is impaired in adaptive behavior to a moderate degree. All witnesses testified that respondent needs supervision in a supportive and protective environment. All witnesses agreed that respondent has a severe communication problem which inhibits him from safely adapting to the outside world. Respondent lacks ability to communicate

within himself as well as with others. Dr. Randall stated that "[i]t's not just the technique of language, but the process of formulating concepts and language," which respondent lacks. Further, this problem is unlikely to change significantly in the future. In noting this, Dr. Randall testified that one of the cardinal diagnostic assessments of mental retardation is that the underlying disorder is irreversible and unchangeable. Respondent's language and communication deficiencies place him in situations where, as Dr. Randall testified, "he is going to be in great jeopardy of his life and welfare. His behavior also in attempting to communicate and relate can readily be perceived as provocative or threatening behavior and invite a counterattack from others." Dr. Kahn also testified that "[o]nly a person who is qualified, who puts in a lot of effort can make out with anticipation what it is he wants." Respondent's social worker, Mike Oliva, testified that even for him communication with respondent involved a lot of guess work. Dr. Kahn stated in his psychological evaluation report that the respondent seems not well equipped in looking after himself. His safety and life may be in jeopardy. Respondent is easily manipulated and exploited. He said that respondent has been developing severely maladaptive judgment, and that he spends his time wandering about and participating in anti-social or criminal acts. He operates on impulse and opportunity. When he sees something he wants, he simply takes it. He does not understand the concept of stealing or punishment and retaliation. Dr. Kahn testified that respondent does not really have the ability to observe the rights of others. All three witnesses noted that respondent does not understand that he can be arrested for breaking into houses, and that he does not seem to learn from past experiences.

Many other basic adaptation problems were evident in the record. There is testimony that respondent does not have an appropriate concept of the value of money or the appropriate use of money. Dr. Kahn testified that respondent lacks the ability to budget and pay bills. All agree that respondent is unable to hold a competitive job.

Dr. Randall testified that respondent's social adaptation is markedly impaired, has changed little since 1983, and is not likely to improve significantly. The probate court properly noted that respondent is unable to provide for his most basic needs. The evidence demonstrates his maladaptive behavior. Respondent's inability to communicate within himself and with others has helped make him susceptible to manipulation and exploitation. This language deficiency helps explain his inability to determine right from wrong or to observe the rights of others. His criminal and anti-social activities have persisted and place his health and life in jeopardy. This alone is evidence of maladaptive behavior. *In re Elmore,* 13 Ohio App.3d at 84, 13 OBR at 99, 468 N.E.2d at 104. The fact that respondent's severe language and communication deficiencies have not improved

significantly, coupled with his continued criminal and anti-social activities, supports the probate court's finding that respondent was at least moderately mentally retarded. In fact, the evidence shows that respondent's social adaptation is "markedly impaired."

A review of the record also reveals that respondent functions at a moderate level of intellectual functioning. The main evidence in support of a finding that respondent is not moderately mentally retarded is the test score of a test administered by Dr. Kahn. The credibility of this test has been questioned by Dr. Randall and by Dr. Kahn himself. Dr. Kahn qualified the result by stating in his report that respondent's "familiarity with the test materials was obvious and results may contain some element of repeated practice over previous years." Dr. Randall testified that some of the testing in previous years, including Dr. Kahn's most recent evaluation, reflects the fact that the test givers had some special knowledge of respondent's communication process. Dr. Randall also stated that it is very difficult to assess respondent and, for these reasons, he questions the validity of test results which place respondent in the middle or the above-mild level of retardation.

This court has previously held that test scores are a factor to be considered in determining actual intellectual functioning. *In re Elmore,* 13 Ohio App.3d at 84, 13 OBR at 99, 468 N.E.2d at 104. Dr. Randall testified that proper determination of the intellectual functioning level involves consideration of the adaptive level of functioning in addition to standard IQ tests. This includes "social adjustment, vocational adjustment, ability to communicate, ability to formulate ideas, to be able to receive and express thoughts and ideas." The evidence discussed above shows that respondent's adaptive behavior is markedly impaired. Any discrepancy in intellectual testing should be adjusted to account for this additional adaptation deficiency. Furthermore, Dr. Randall testified that respondent's cognitive skills, ability to think, to reason, to abstract, to use logic, to generalize, to draw upon past experience, and to plan are all severely impaired. In light of the evidence presented regarding respondent's moderate level of intelligence, including adaptation deficiencies, and the questionable validity of the IQ test results, the probate court properly found respondent to be functioning at the moderate level of intellectual functioning.

It is not necessary to decide the part of the assignment of error raised by appellant, Ohio Department of Mental Retardation and Developmental Disabilities, regarding the probate court's ruling on continued commitment. A current comprehensive evaluation is mandatory, and the initial commitment, as previously discussed, was invalid. The judgment of the probate court is reversed and the case is remanded to the probate court for a new full hearing and determination after obtaining a current comprehensive evaluation. If appropriate, the probate

court may order the temporary detention of respondent, pursuant to R.C. 5123.75, until the full hearing can be properly scheduled and held. Hopefully, the comprehensive evaluation will provide some insight into the best placement for respondent and contribute to a solution for this very frustrating situation that seems to be causing respondent to fall through the cracks to the danger of himself and the public. The difficulty of the situation is no excuse to try to ignore the problem rather than to cooperate to find an acceptable solution.

This court supports and reiterates the probate court's order urging the Ohio Department of Mental Retardation and Developmental Disabilities and the Franklin County Board of Mental Retardation and Developmental Disabilities to work together to develop a meaningful treatment plan and to continue efforts to develop a more appropriate "least restrictive" placement.

Appellants' first, second, fourth and fifth assignments of error are sustained to the extent indicated, and appellants' third and sixth assignments of error are overruled. The judgments of the trial court are reversed and the cases are remanded for further proceedings consistent with this opinion.

*Judgments reversed and causes remanded with instructions.*

PEGGY BRYANT and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.